Filed 1/22/26  P. v. Jackson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101128 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE016570) |
| v. | |
| RICHARD PAUL JACKSON, | |
| Defendant and Appellant. | |

A jury convicted defendant Richard Paul Jackson of burglary, possession of a controlled substance, and possession of drug paraphernalia.  In bifurcated proceedings, the trial court found true a prior strike conviction allegation and three aggravating factors and sentenced Jackson to an aggregate term of 12 years.  On appeal, Jackson contends the trial court violated his right to a jury trial by imposing the upper term without an express waiver of his right to a jury trial on the aggravating factors.  He also contends that under *Chapman v. California* (1967) 386 U.S. 18 the error was not harmless beyond a reasonable doubt.  We agree.  Therefore, we reverse the judgment and remand for a jury trial on the aggravating factors.

1

BACKGROUND

In October 2023, a married couple locked up their apartment in Sacramento County and left to attend a funeral in Los Angeles. They returned two days later to find their apartment ransacked and trashed and Jackson in their bed wearing the wife's robe. A neighbor called 911 and Jackson was arrested. Later, the wife noticed that cash, shoes, clothing, some of her jewelry, and her husband's wedding ring were missing.

An amended information charged Jackson with first degree burglary (Pen. Code, §§ 459, 460, count one), possession of a controlled substance, a misdemeanor (Health & Saf. Code, § 11377, subd. (a), count two), and possession of drug paraphernalia, a misdemeanor (Health & Saf. Code, § 11364, count three). As to count one, the information alleged that Jackson committed the offense while out on bail for another offense. (Pen. Code, § 12022.1.) The information also alleged a prior strike conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, 1192.7, subd. (c))[1] and four aggravating factors (Cal. Rules of Court, rule 4.421(b)(2), (3), (4) & (5)).

A jury convicted Jackson on all counts. In bifurcated proceedings, the court proceeded to find the enhancement allegation true.

The People dismissed one aggravating factor, that Jackson was on probation at the time of the offense, and asked the court to find the remaining aggravating factors true. Defense counsel stated they could argue the aggravating factors at sentencing. The trial court confirmed the parties were "fine putting the aggravating factors over to sentencing."

At sentencing, defense counsel objected to the trial court determining the truth of the on-bail enhancement, arguing that the jury needed to make that determination. Citing

---

[1] Undesignated statutory references are to the Penal Code.

2

*People v. Johnson* (2012) 208 Cal.App.4th 1092, the trial court rejected defense counsel's argument and found the on-bail enhancement allegation true beyond a reasonable doubt.

Jackson's maximum potential sentence was 14 years. The probation officer's report recommended the middle term of four years, doubled to eight years because of Jackson's prior strike, plus the two-year on-bail enhancement for an aggregate sentence of 10 years. Defense counsel asked the court to strike Jackson's prior conviction and/or strike the on-bail enhancement in the interest of justice. The trial court reviewed Jackson's prior criminal record and stated that Jackson had "consistently violated the law." The court indicated that it was not inclined to give Jackson the maximum sentence and it struck the punishment on the on-bail enhancement and sentenced Jackson to the upper term of six years, which was doubled to 12 years based on the prior strike conviction.

The court dismissed the misdemeanor convictions pursuant to *People v. Harvey* (1979) 25 Cal.3d 754.

Jackson timely appealed.

DISCUSSION

Jackson contends the trial court violated his Sixth Amendment right to have a jury determine the aggravating factors when it made findings on those factors without an express waiver of his right to a jury trial. Jackson further contends that the error requires reversal under *Chapman* because the record does not establish that a jury would have found all the factors the court relied on to impose the upper term true beyond a reasonable doubt.

The People concede that Jackson did not expressly waive a jury trial on the aggravating factors and only waived as to the prior conviction allegation. They contend, however, there was no error because under section 1170, subdivision (b)(3), the trial court could decide the aggravating factors at issue here using certified records of Jackson's prior convictions. They also contend that even if the court erred, the error was

3

harmless because a jury would have found all the aggravating factors true beyond a reasonable doubt.

We review questions about whether a defendant's constitutional rights were violated de novo. (*People v. Palmer* (2020) 49 Cal.App.5th 268, 280.) If we determine that a defendant's right to a jury trial has been violated, we apply the harmless error standard in *Chapman*. (*People v. Lynch* (2024) 16 Cal.5th 730, 768 (*Lynch*).) Under the *Chapman* standard, we must reverse and remand a sentence imposed under section 1170, subdivision (b) unless we conclude "beyond a reasonable doubt that a jury would have found true *all* of the aggravating facts relied upon by the court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statute." (*Lynch*, at p. 768, italics added.)

*1. Additional Factual Background*

The amended information alleged four aggravating factors pursuant to section 1170 and California Rules of Court, rule 4.421. Before the trial began, the parties requested bifurcation of the enhancements and aggravating factors. Defense counsel indicated that Jackson had not agreed to waive a jury trial on "anything" and presumed there would be a jury trial on the prior strike conviction. Later in the trial, the court confirmed there would be a jury trial on the prior strike conviction. The court also confirmed that the jury would decide the aggravating factors as well. Following the verdict, Jackson agreed to a court trial on the prior strike allegation.

Before the court made its findings on the prior strike allegation, the People dismissed the aggravating factor alleging that Jackson committed the offense while on probation and asked the court to find the remaining three aggravating factors true. That left aggravating factors that Jackson's prior convictions were numerous and of increasing seriousness, that Jackson had served a prior term in prison or county jail, and that Jackson's prior performance on probation, parole, or other supervision was unsatisfactory. Defense counsel asked the court to address the aggravating factors at

4

sentencing. The trial court found the prior strike conviction true, then confirmed that the parties were "fine with putting the aggravating factors over to sentencing."

At sentencing, the trial court and defense attorney expressed their belief that Jackson had waived his right to a jury trial on the aggravating factors. Jackson had not in fact entered such a waiver. In sentencing Jackson, the trial court did not specifically address the aggravating factors. Rather, it reviewed Jackson's prior record, indicating, "Looking over the case and closer look at his prior record, he has some parole violations too in 2021. And then he picked up the vandalism case. He was arrested for that, was dismissed with a Harvey waiver, and then he picked up this case." The court then concluded that Jackson "has consistently violated the law" and imposed the upper term on the burglary conviction.

2. *Analysis*

   a. *The failure to afford Jackson a jury trial on the aggravating factors constituted error*

In 2022, the Legislature amended section 1170, subdivision (b) to limit a trial court's discretion to impose the upper term of a sentencing triad. (*Lynch, supra*, 16 Cal.5th at pp. 757, 773.) Under the current version of the statute, trial courts may impose a sentence that exceeds the middle term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) Subdivision (b)(3) provides that, "Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

Section 1170, subdivision (b)(3) is consistent with the holding in *Almendarez-Torres v. United States* (1998) 523 U.S. 224 in which our high court recognized an

5

exception for prior offenses to the rule that "a unanimous jury ordinarily must find beyond a reasonable doubt any fact that increases a defendant's exposure to punishment." (*Erlinger v. United States* (2024) 602 U.S. 821, 836; see *Almendarez-Torres*, at p. 247.) The court in *Almendarez-Torres* found: "[T]he sentencing factor at issue here— recidivism—is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." (*Almendarez-Torres*, at p. 243.)

In *Erlinger*, the Supreme Court clarified that the *Almendarez-Torres* court permitted a judge to undertake the job of finding the fact of a prior conviction—and that job alone. (*Erlinger v. United States, supra*, 602 U.S. at p. 837.) The question before the *Erlinger* court was whether a judge may decide that a defendant's past offenses were committed on separate occasions or whether the Fifth and Sixth Amendments required a jury to make that determination beyond a reasonable doubt. (*Erlinger*, at p. 825.) In holding that Erlinger was entitled to a jury determination on the issue, the court stated: "[D]eciding whether those past offenses occurred on three or more different occasions is a fact-laden task," and "judges may not assume the jury's factfinding function for themselves." (*Id.* at p. 834.)

Following the United States Supreme Court decision in *Erlinger,* the California Supreme Court confirmed in *Lynch* that " '[v]irtually "any fact" ' that increases 'a defendant's exposure to punishment . . . must "be submitted to a jury" and found unanimously beyond a reasonable doubt.' " (*Lynch, supra*, 16 Cal.5th at pp. 761-762.) Unless the defendant waives their right to a jury trial or stipulates that the aggravating factors are true, the People must prove to a jury the facts relied on to justify an upper term sentence beyond a reasonable doubt. (*People v. Wiley* (2025) 17 Cal.5th 1069, 1086 (*Wiley*).) "This jury trial guarantee retains its vitality even if the inquiry is ' " 'straightforward.' " ' " (*Id.* at p. 1084, quoting *Erlinger v. United States, supra*, 602 U.S. at p. 842.)

Our Supreme Court in *Wiley* confronted the question of "how broadly the concept of 'the fact of a prior conviction' is to be understood and the extent of the *Almendarez-Torres* exception." (*Wiley, supra*, 17 Cal.5th at p. 1079.) Wiley pled guilty to feloniously making a criminal threat. To justify its upper term sentence, the trial court cited Wiley's prior convictions, poor performance on probation, and the fact that the charges were becoming more serious. The court held that an inquiry of whether a defendant's prior convictions are of increasing seriousness "requires a comparison and evaluation of the relationship among a defendant's prior convictions, and a determination as to their relative seriousness. As a result, it involves something more than a narrow factual finding that the convictions were sustained and what elements were required to prove them." (*Id*. at p. 1082.) While *Wiley* left section 1170, subdivision (b)(3) intact, it clarified its scope. The court concluded a defendant is entitled to a jury determination on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm. Ultimately the Supreme Court concluded that Wiley was entitled to have a jury determine whether his prior convictions were of increasing seriousness and whether he had performed unsatisfactorily on probation before the court could rely on those aggravating facts to find justification for an upper term sentence. (*Wiley*, at p. 1085.)

We conclude the holdings in *Erlinger* and *Wiley* apply here. The trial court's finding that Jackson had "consistently violated the law" is a decision that goes beyond the bare fact of the prior conviction and its elements and therefore exceeds the scope of the statutory exception to the jury trial right for prior conviction that appears in section 1170, subdivision (b)(3). In light of our conclusion, we determine that absent a waiver Jackson was entitled to a jury trial on the aggravating factors. Having failed to afford him one, we turn to whether Jackson was prejudiced by the violation.

### b. *Prejudice*

In determining whether the omission of a jury trial was prejudicial, our inquiry is not focused on whether there is sufficient evidence to support the trial court's findings. (*Wiley, supra*, 17 Cal.5th at p. 1090.)  Under the *Chapman* standard of prejudice, " 'a sentence imposed under . . . section 1170[, subdivision ](b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true *all* the aggravating factors' " the trial court used to justify imposing the upper term.  (*Id.* at p. 1087, italics added.)  Where the omission of a jury trial as to every aggravating fact relied upon by the trial court cannot be found harmless beyond a reasonable doubt, " '[t]he proper remedy . . . is to remand and give the People an opportunity to retry' the aggravating facts." (*Lynch, supra*, 16 Cal.5th at p. 776.)  Applying this standard, we conclude the failure to afford Jackson a jury trial on the aggravating factors was not harmless beyond a reasonable doubt.

In *Wiley*, the defendant challenged the trial court's omission of a jury trial on two aggravating factors:  (1) increasing seriousness of the defendant's convictions and (2) unsatisfactory performance on probation.  (*Wiley, supra*, 17 Cal.5th at pp. 1087-1091.)  The California Supreme Court determined the trial court's failure to afford Wiley a jury trial on the allegations was prejudicial.  (*Ibid.*)

As to the increasing seriousness allegation, the court explained that "the inquiry requires a comparison and evaluation of the relationship among a defendant's prior convictions, and a determination as to their relative seriousness." (*Wiley, supra*, 17 Cal.5th at p. 1082.)  A fact finder can assess the increasing seriousness of a defendant's prior convictions by comparing the range of punishment or the elements of respective offenses. (*Ibid.*)  Wiley's California Law Enforcement Telecommunications System (CLETS) rap sheet showed a lengthy criminal history beginning in 1998 and extending through 2020, including at least 10 misdemeanors, several drug-related felony offenses, and a felony conviction for making criminal threats. (*Id*. at pp. 1087-1089.)

8

The court reasoned that a jury could have emphasized Wiley's felony convictions or his more recent convictions and "reached the opposite conclusion . . . based on the totality of Wiley's criminal conduct and the applicable sentences for those transgressions." (*Id*. at p. 1090.) Because the inquiry is a "comparative and qualitative one," it is " ' " 'difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as the trial court.' " ' " (*Ibid.*)

The court reached the same conclusion on the unsatisfactory performance on probation allegation. (*Wiley, supra*, 17 Cal.5th at p. 1090.) The court rejected the People's argument that no rational jury would have reached a finding contrary to the trial court's finding on that allegation, given Wiley's commission of offenses two out of the three times he was on probation. (*Id*. at p. 1091.) It explained that the probation officer's assessment, which characterized Wiley's performance as mixed, demonstrated that Wiley's record was open to a different interpretation. (*Ibid.*) The court ultimately could not discount the possibility that in a contested jury trial Wiley could have produced evidence that affected the jury's determination of this aggravating factor; nor could it discount the possibility that a rational jury could have disagreed that the People proved Wiley's "*overall performance* on probation was unsatisfactory." (*Ibid.*)

Here, Jackson observes that the trial court's finding that Jackson "consistently violated the law" was not an express finding that any of the three aggravating factors was true. We agree that at best, the trial court's findings were imprecise, and that even if "consistently violated the law" was a distinct aggravating factor from the three aggravating factors the People alleged, a jury was required to make that finding as well. (*Lynch, supra*, 16 Cal.5th at pp. 761-762.)

Here, consistent with section 1170, subdivision (b)(3), the People presented the trial court with a certified record of Jackson having served two prior terms in prison, thus the aggravating factor that Jackson had served a prior term in prison was properly proven.

However, the remaining two aggravating factors were not submitted to a jury, nor stipulated to by Jackson. As our Supreme Court clarified in *Lynch*, "under the current statute the facts supporting every aggravating circumstance upon which the trial court relies to 'justify' imposition of the upper term must be properly proven as the statute requires." (*Lynch*, *supra*, 16 Cal.5th at p. 757.) On this record, we cannot conclude that a jury would find true that Jackson's convictions were numerous and of increasing seriousness, or that his performance on probation, parole, or other supervision was unsatisfactory. As the court explained in *Wiley*, in assessing whether a defendant's convictions are of increasing seriousness, a fact finder can consider factors like the range of punishment for or the elements of the defendant's convictions. (*Wiley, supra*, 17 Cal.5th at p. 1082.) Based on our review of Jackson's prior record—including his CLETS certified rap sheet, certified records of his convictions, and the probation officer's report—the sentences imposed for his conviction, the age of his felony convictions, and the nature of his recent offenses could lead a jury to conclude that Jackson's convictions were not of increasing seriousness. (*Id*. at pp. 1087-1089, 1090-1091.)

Specifically, Jackson's more recent convictions are misdemeanors. Jackson had two prior serious or violent felony convictions, the criminal threats conviction and a domestic violence conviction. Each conviction is 13 years old. His only other felony convictions between 2012 and 2021 were vehicle theft and possession of a stolen vehicle, both of which arose from a single incident. The probation officer's report showed two felony probation violations in 2021 for which Jackson received 90 days in jail. After January 2021, Jackson's convictions, the current offense excepted, were trespassing or drug-related misdemeanors.

The sentences imposed for many of these convictions could also lead a rational jury to conclude that his convictions were not of increasing seriousness. Although there was a significant prison term imposed in 2017, for the vehicle theft convictions, most of Jackson's sentences after 2017 were a year or less in jail.

Similarly, Jackson's record reflects several arrests without resulting convictions. Considering such, a rational jury could conclude that he has not "consistently violated the law."

On this record, "we cannot conclude beyond a reasonable doubt that a properly instructed jury" would have found these aggravating factors true. (*Wiley, supra*, 17 Cal.5th at p. 1090.) Because it is possible a jury could reach the opposite conclusion on one of the aggravating factors the court may have relied on to impose the upper term, the omission of Jackson's right to a jury trial on the aggravating factors was not harmless beyond a reasonable doubt. (*Ibid*.) We, therefore, reverse Jackson's sentence and remand for a trial on the aggravating factors.

DISPOSITION

The judgment is reversed and the matter remanded for a trial on the aggravating factors consistent with this opinion.

/s/<br>
EARL, P. J.

We concur:

/s/
MAURO, J.

/s/
WISEMAN, J. *

---

\*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.